```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

_____
                                )
GABRIEL GARAVANIAN, et al.,     )
                                )
            Plaintiffs,         )
                                )
      v.                        )   CIVIL ACTION
                                )   NO. 23-10678-WGY
JET BLUE AIRWAYS CORPORATION,   )
SPIRIT AIRLINES, INC.,          )
                                )
            Defendants.         )
                                )
_____)
```

YOUNG, D.J.                                    December 13, 2023

**MEMORANDUM OF DECISION**

In this private antitrust litigation, the Defendant Airlines filed a motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, and the parties fully briefed the issue, Pl.'s Opp'n. Mot. Summ. J., ECF No. 184; Def.'s Reply Opp'n. Mot. Summ. J., ECF No. 212. This Court held oral argument on October 4, 2023, and took the parties' arguments regarding the Plaintiffs' standing under advisement.

After careful review, this Court **DENIED** the motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with respect to Plaintiffs Gabriel Garavanian ("G. Garavanian") and Timothy Niebor ("Niebor"). This Court **GRANTED** the motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with respect to all other Plaintiffs as they lack standing under

[1]

Article III of the United States Constitution.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

**I. BACKGROUND**

    **A. The JetBlue and Spirit Merger**

On July 28, 2022, Jet Blue Airways Corporation ("JetBlue") and Spirit Airlines, Inc. ("Spirit") executed a final merger agreement.  Compl. ¶ 48, ECF No. 1.  JetBlue, the sixth largest airline in the United States, agreed to pay $3.8 billion to acquire Spirit, the seventh largest airline in the United States.  Id. at ¶¶ 33, 48.  The proposed merger would create the country's fifth largest airline with 10.2% of the national market.  Id. at ¶ 50.  Spirit is known as an "Ultra-Low-Cost Carrier" ("ULCC"), meaning that its offerings target budget-conscious passengers with low-cost flight options.  Id. at ¶¶ 52-55.  The Department of Justice, joined by multiple states, has also filed a lawsuit under the Clayton Act to prevent the proposed merger between JetBlue and Spirit.  See United States of America, Commonwealth of Massachusetts, District of Columbia, State of New York, State of California, State of North Carolina, State of Maryland, State of New Jersey v. JetBlue Airways Corporation, Spirit Airlines, Inc., Civ. Action No. 1:23-cv-10511-WGY (D. Mass. 2023).

**B. Plaintiffs' Relationship to the Airline Industry**

The Plaintiffs here are a group of private individuals who have flown and continue to fly as passengers in commercial air travel. Compl. ¶ 42, ECF No. 1. Some of the Plaintiffs also work as travel agents. Id. As of the close of discovery, none of the Plaintiffs had booked plans to travel with Spirit in the future.[1] Reply Mem. Supp. Summ. J., ECF No. 212. Twenty-two of the twenty-four living Plaintiffs have not flown Spirit within the past four years.[2] Pl.'s Opp'n. Def.'s Statement Material Facts Supp. Summ. J. ¶ 27, ECF No. 186.

The Plaintiffs who work in the travel industry are Brito, Brown,[3] Faust, Fjord, Freeland, Fry, G. Garavanian, Gardner, Jolly, McCarthy, Pulfer, Rubinsohn, Stensrud, Talewsky, and Ward. Id. at ¶ 29. Aside from Brown and McCarthy (who each receive a set yearly salary), the Plaintiffs who work in the travel industry are generally paid in one of two ways for

---

[1] On August 22, 2023 (almost two months after the close of discovery -- June 28, 2023 -- and weeks after the Airlines filed for summary judgment), eighteen of the Plaintiffs filed declarations, contradicting prior sworn testimony, to state that they now had future flight plans booked with Spirit. Reply Mem. Supp. Summ. J., ECF No. 212.

[2] Stansbury died after the commencement of this action. Pl.'s Opp'n Def.'s Statement Material Facts Supp. Summ. J. ¶ 168, ECF No. 186.

[3] Brown's affiliation with the travel industry is disputed by the parties; she has testified that she is presently employed as the travel manager for the Beach Boys. Pl.'s Opp'n Def.'s Statement Material Facts Supp. Summ. J. ¶ 29, ECF No. 186.

[3]

booking airline tickets: 1) flat service fees for each flight, for which they charge customers directly; and 2) scaled service fees based on the price of the airline ticket. Id. at ¶¶ 30, 55, 141.

The two Plaintiffs who have flown Spirit in the past four years, Niebor and G. Garavanian, both fly Spirit regularly. See Pl. Niebor's Supp. Responses Interrogs., ECF No. 175-66. In the past eight years, Niebor has flown 25 times, with 57% of those flights on Spirit Airlines. Id. Garavanian flies Spirit about four times a year, traveling mostly between Boston and his second home in Myrtle Beach, FL. See Pl. G. Garavanian's Supp. Responses Interrogs., ECF No. 175-43; G. Garavanian Dep., ECF No. 175-42.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment. Id.

In reviewing the evidence, this Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). This Court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151.

The moving party bears the initial burden of demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, then the nonmovant must set forth specific facts sufficient to establish a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

### III. ANALYSIS

The Plaintiffs who do not regularly fly Spirit Airlines lack standing under Article III of the United States Constitution. Therefore, the Court granted summary judgment for the Airlines with regards to those Plaintiffs (Arcell, Brito, Brown, D'Augusta, Davis, Faust, Fjord, Freeland, Fry, H. Garavanian, Gardner, Jolly, Malaney, Marazzo, McCarthy, Pulfer, Rubinsohn, Russell, Stensrud, Talewsky, Ward, and Whalen). The Court denied summary judgment with regards to the two Plaintiffs who fly Spirit Airlines regularly: G. Garavanian and Niebor.

[5]

### A. Standing Under Article III

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case -- in other words, standing." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203, (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

Most of the Plaintiffs in this case fail to establish standing because they cannot show that they have suffered an injury in fact that is concrete, particularized, and actual or imminent. The injury in fact must be "concrete and particularized"; it must also be "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Plaintiffs G. Garavanian and Niebor have standing because they are "the type of person the law intends to protect against the harm of which [they] complain." Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 408 (1st Cir. 1985) (citing Ozonoff v. Berzak, 744 F.2d 224, 227 (1st Cir. 1984)).

[6]

A plaintiff must show that "he personally has suffered some actual or threatened injury ...." Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 472 (1982) (quotations omitted). "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals," and that federal courts exercise "their proper function in a limited and separated government." TransUnion LLC, 141 S. Ct. at 2203 (citations and quotations omitted). "Concreteness and particularity are two separate requirements." Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020) (citing Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)). An injury is "concrete" when it "actually exist[s]." Id. (quotations omitted). An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1, that goes beyond widely shared "generalized grievances about the conduct of government," Lyman, 954 F.3d at 361 (citing Becker v. Fed. Election Comm'n, 230 F.3d 381, 390 (1st Cir. 2000)).

Plaintiffs Arcell, Brito, Brown, D'Augusta, Davis, Faust, Fjord, Freeland, Fry, H. Garavanian, Gardner, Jolly, Malaney, Marazzo, McCarthy, Pulfer, Rubinsohn, Russell, Stensrud, Talewsky, Ward, and Whalen here argue that the proposed merger of JetBlue and Spirit is "a violation of Section 7 of the

[7]

Clayton Antitrust Act (15 U.S.C. § 18) because the direct effect of the elimination of Spirit may be 'substantially to lessen competition, or tend to create a monopoly' in the passenger airline industry by the elimination of a significant competitor in a non-trivial transaction." Compl. ¶ 6, ECF No. 1. Under Section 16 of the Clayton Act, "[a]ny person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. The Plaintiffs claim that they will suffer losses and damages from the proposed merger due to their participation as consumers in the markets that may be impacted by the proposed merger. See Pl.'s Mem. Opp'n Summ. J. 7-11, ECF No. 184. These Plaintiffs, however, do not attempt to differentiate themselves from any other consumers in the market; on the contrary, they argue that the merger will harm all consumers in the relevant markets, regardless of their preferred airline. Id. at 11-12. The Plaintiffs also argue that those Plaintiffs who work in the travel industry will be further harmed because they will "lose customers and sales as a result of the merger's effects, as more and more people turn away from air travel as a result of higher prices and reductions in service." Id. at 13.

The Plaintiffs' claims of harm do not meet the "concrete and particularized" standard. Although, viewing all facts in

[8]

the light most favorably for the Plaintiffs, there could be an argument that the harms alleged will be concrete (at least for the two travel agent Plaintiffs who rely on commissions), this harm is still not particularized. As the Plaintiffs themselves argue, the proposed merger will not affect the Plaintiffs in a "personal and individual way." Lujan, 504 U.S. at 560 n.1. Plaintiff's injuries, instead, are "widely shared." Lyman, 954 F.3d at 361. These claimed injuries, therefore, do not meet the requirements for Article III standing.

**B. The Plaintiffs as Consumers of Air Travel**

According to their deposition testimony and the proffered evidence, both Plaintiffs G. Garavanian and Niebor fly Spirit Airlines regularly, with 57% of Niebor's 25 flights in the past 8 years on Spirit and G. Garavanian flying 8 times with Spirit in the last year alone. See Pl. Niebor's Supp. Responses Interrogs., ECF No. 175-66; Pl. G. Garavanian's Supp. Responses Interrogs., ECF No. 175-43; G. Garavanian Dep., ECF No. 175-42. In contrast, none of the other Plaintiffs have ever flown Spirit, and only two have even flown on a route the Plaintiffs' expert identified as an "affected route" as defined by antitrust harms. See generally Pl.'s Supp. Responses Interrogs. and Pl.'s Dep., ECF No. 175. These Plaintiffs' flying habits, even if frequent, fail to demonstrate a "'personal stake' in the case"

[9]

as needed for Article III standing.  TransUnion, 141 S. Ct. at 2203.

**IV. CONCLUSION**

The defendants' motion for summary judgment, ECF No. 172, was denied as to Plaintiffs G. Garavanian and Niebor, and granted as to all others for the reasons set forth above. As the Court of Appeals has reminded me, grant of a motion under Fed. R. Civ. P. 54 (b) requires the district court "expressly [to] determine that there is no just reason for delay." I reasoned here that a prompt appeal by the dismissed individuals is in the interest of justice due to the pendency of a companion case by the United States seeking the same relief. See United States v. Jet Blue Airways Corp., Civ. Action No. 23-10511-WGY (D. Mass.).

                                    **Respectfully Submitted,**

                                     /s/William G. Young
                                        WILLIAM G. YOUNG
                                             JUDGE
                                             of the
                                        UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[10]