IN THE

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

KATHERINE R. ARCELL; JOSE M. BRITO; JAN-MARIE BROWN; ROSEMARY D'AUGUSTA; BRENDA K. DAVIS; PAMELA FAUST; CAROLYN FJORD; DON FREELAND; DONNA FRY; HARRY GARAVANIAN; YVONNE JOCELYN GARDNER; VALARIE ANN JOLLY; MICHAEL C. MALANEY; LEN MARAZZO; LISA MCCARTHY; DEBORAH M. PULFER; BILL RUBINSOHN; SONDRA K. RUSSELL; CLYDE D. STENSRUD; GARY TALEWSKY; PAMELA S. WARD; CHRISTINE WHALEN,

*Plaintiffs – Appellants,*

TIMOTHY NIEBOR; GABRIEL GARAVANIAN,
*Plaintiffs,*

*v.*

JETBLUE AIRWAYS CORPORATION; SPIRIT AIRLINES, INC.,
*Defendants – Appellees.*

On Appeal from the United States District Court
for the District of Massachusetts
Case No. 1:23-cv-10678-WGY, Judge William G. Young

## BRIEF OF APPELLANTS

JOSEPH M. ALIOTO JR. (NO. 1210035)
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 398-3800
Joseph@AliotoLegal.com

*[additional counsel inside cover]*

Stephen G. Larson
Robert F. Ruyak
Scott Gregory Herrman
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email: slarson@larsonllp.com
Email: rruyak@larsonllp.com
Email: gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K.
PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Lingel H. Winters
LAW OFFICES OF LINGEL H.
WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale
LAW OFFICES OF LAWRENCE
G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL
LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email:
rbonsignore@classactions.us

*Counsel for Plaintiffs-Appellants*
*Katherine R. Arcell*, et al.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................ii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ................ 1

INTRODUCTION ................................................................................ 2

JURISDICTIONAL STATEMENT............................................................ 3

ISSUE PRESENTED ............................................................................ 5

STATEMENT OF THE CASE ................................................................ 6

    A. Nature of the Case ........................................................... 6

    B. Plaintiffs' Expert ............................................................. 7

    C. The Airlines' Motion for Summary Judgment.......................... 10

    D. Disposition Below............................................................ 10

    E. Statement of Facts ......................................................... 12

SUMMARY OF ARGUMENT................................................................ 24

STANDARD OF REVIEW .................................................................... 26

ARGUMENT..................................................................................... 27

  I.  APPELLANTS HAVE STANDING UNDER SECTION 16 AS
      CONSUMERS THREATENED WITH HARM FROM AN
      ANTITRUST VIOLATION...................................................... 27

  II. AS CONSUMERS IN MARKETS THAT WILL BE IMPACTED BY
      THE MERGER, APPELLANTS HAVE STANDING REGARDLESS
      OF WHAT AIRLINE THEY FLY ............................................. 32

  III.APPELLANTS HAVE ARTICLE III STANDING ....................... 35

CONCLUSION .................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**             **Page**

*Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State
Council of Carpenters,*
459 U.S. 519 (1983) ........................................................ 33, 37

*Baez v. Town of Brookline, Massachusetts,*
44 Fed.4th 79 (1st Cir. 2022) ............................................ 27

*Becker v. Fed. Elect'n Comm'n,*
230 F.3d 381 (1st Cir. 2000)........................................... 38, 39

*California v. American Stores Co.,*
495 U.S. 271 (1990) ............................................................ 28

*Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,*
754 F.2d 404 (1st Cir. 1985).................................... 26, 27, 28

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) .............................................................. 35

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ............................................................ 35

*Fed. Trade Comm'n v. H.J. Heinz Co.,*
246 F.3d 708 (D.C. Cir. 2001) ........................................... 31

*Fed. Trade Comm'n v. Penn St. Hershey Med. Cntr,*
838 F.3d 327 (3d Cir. 2016)........................................... 9, 31

*Garavanian, et al. v. JetBlue Airways Corp. and Spirit
Airlines, Inc.,*
Case No. 23-cv-10678 (D. Mass.) ..................................... 5, 7

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ....................................................... 13, 38

*Lyman v. Baker,*
954 F.3d 351 (1st Cir. 2020)....................................... *passim*

*Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l
Hosp.,*
604 F.3d 1291 (11th Cir. 2010) ......................................... 33

*SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co.*,
    48 F.3d 39 (1st Cir. 1995) .......................................................... 25, 33, 37

*Serpa Corp. v. McWane, Inc.*,
    199 F.3d 6 (1st Cir. 1999) ............................................................... 33, 37

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................ 36

*Town of Norwood, Mass v. New England Power Co.*,
    202 F.3d 408 (1st Cir. 2000) ............................................... 25, 34, 35, 37

*United States v. JetBlue Airways Corp. and Spirit
    Airlines, Inc.*,
    Case No. 23-cv-10511-WGY, 2024 WL 162876 (D.
    Mass) ............................................................................................. 5, 7, 9

*United States v. JetBlue Airways Corp., Spirit Airlines,
    Inc.*,
    Case No. 24-1092 (1st Cir.) ..................................................................... 5

*Valley Forge Christian Coll. v. Am. United for
    Separation of Church & State*,
    454 U.S. 464 (1982) ................................................................................ 38

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ......................................................... 33, 37


**Statutes**

15 U.S.C. § 18 ................................................................................... 2, 7

15 U.S.C. § 26 ..................................................................... 2, 3, 26, 28

28 U.S.C. § 1291 .................................................................................. 4

28 U.S.C. § 1331 .................................................................................. 4

28 U.S.C. § 1337 .................................................................................. 4

# TABLE OF AUTHORITIES

*(continued)*

**Page**

**Rules**

Fed.R.Civ.P. 54(b) ........................................................................ 5


**Treatises**

Hovenkamp, FEDERAL ANTITRUST POLICY: THE LAW OF
    COMPETITION AND ITS PRACTICE (6th ed. 2020) ............................ 33, 36

# REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Appellants respectfully request the Court hear oral argument. The issue presented on appeal – whether consumers have standing to challenge a merger that will raise their prices and diminish their choices – involves a significant issue of antitrust law with nationwide implications. Oral argument will assist the Court in assessing the strength of the evidence presented below and facilitate the Court's evaluation of this important standing case under Section 16 of the Clayton Act, 15 U.S.C. § 26.

# INTRODUCTION

Appellants are consumers of air travel who filed suit to challenge the merger of JetBlue Airways Corp. ("JetBlue") and Spirit Airlines, Inc. ("Spirit") (collectively "Airlines"). Appellants allege the merger will violate Section 7 of the Clayton Act, 15 U.S.C. § 18, which prohibits mergers whose effects "may be substantially to lessen competition … in any line of commerce … in any section of the country." 15 U.S.C. § 18. They brought their suit under Section 16 of the Clayton Act, 15 U.S.C. § 26, which allows private parties to seek injunctive relief against any antitrust violation that "threatens" them with harm.[1]

By eliminating a significant price-cutting rival in Spirit, the merger will not only increase consolidation in routes across the country, it will remove an aggressive maverick that has kept prices in these markets low. As a result, prices in many markets in which Spirit formerly competed will go up. This is especially true in so-called "Spirit-Only routes," in

---

[1] The merger has been enjoined in the government's companion case, which was filed four months after Appellants' complaint was filed. *United States v. JetBlue Airways Corp. and Spirit Airlines, Inc.*, Case No. 23-cv-10511 (D. Mass Jan. 16, 2024).

which Spirit is the only ultra-low cost carrier placing downward pressure on the prices of *all other airlines* serving that route.[2]

The district court concluded that Appellants lack standing because they do not fly Spirit. But, while the district court was right to conclude that Spirit fliers have standing, its decision was too narrow. Consumers in a market infected with the anticompetitive effects of an antitrust violation have standing, regardless of what airline they fly. Here, routes that will be significantly impacted by the merger will result in higher prices charged by every airline serving those routes. Since Appellants regularly fly those routes, they will be forced to pay higher prices as a result of the merger. That threatened harm is concrete, particularized, imminent antitrust injury. Accordingly, Appellants have standing to enjoin the merger. The district court's decision as to them should be reversed.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337(a). The district court granted in part and denied in part the Airlines'

---

[2] Each route is a separate "market" for antitrust purposes.

motion for summary judgment in an Order dated October 11, 2023 and in a Memorandum of Decision dated December 13, 2023. Addendum ("ADD") 1, 4. In its October 11, 2023 order, the district court entered judgment against twenty-two of the twenty-four original plaintiffs pursuant to Federal Rule of Civil Procedure 54(b). ADD 2. Appellants timely filed a notice of appeal on October 25, 2023. Volume IV Joint Appendix ("IV JA") 2612. This Court has jurisdiction to review the final judgment pursuant to 28 U.S.C. § 1291.

On December 13, 2023, the district court justified its certification of this appeal pursuant to Federal Rule of Civil Procedure 54(b) on the grounds that "a prompt appeal by the dismissed individuals is in the interest of justice due to the pendency of a companion case by the United States seeking the same relief." ADD 13. Thereafter, on January 16, 2024, the district court permanently enjoined the merger in the companion case. *United States v. JetBlue Airways Corp. and Spirit Airlines, Inc.*, Case No. 23-cv-10511-WGY, 2024 WL 162876 (Jan. 16, 2024). That decision is now on review before this Court. *United States v. JetBlue Airways Corp., Spirit Airlines, Inc.*, Case No. 24-1092 (1st Cir.) . The remaining plaintiffs below, G. Garavanian and Nieboer, have filed a

motion for leave to file a motion for summary judgment in light of the judgment in the companion government case. *Garavanian, et al. v. JetBlue Airways Corp. and Spirit Airlines, Inc.*, Case No. 23-cv-10678-WGY (D. Mass Mar. 1, 2024), ECF 343. This appeal of a judgment certified under Fed.R.Civ.P. 54(b) is properly before the Court to be decided without undue delay in light of the circumstances.

## ISSUE PRESENTED

Appellants regularly purchase airline tickets and fly routes that will be adversely impacted by the anticompetitive effects of the Airlines' proposed merger. Post-merger, these routes will experience market-wide reductions in capacity and concomitant increases in prices imposed by *every* airline serving the routes. However, the district court found that Appellants lack Article III standing because they fly these routes on airlines *other than* Spirit. The issue presented is:

> Do consumers have standing to challenge a proposed merger where they are threatened with future loss or damage in markets negatively impacted by the merger, even though they purchase products in the market from sellers other than the merging entities?

## STATEMENT OF THE CASE

### A. Nature of the Case

On November 3, 2022, twenty-five air travel consumers brought this suit in the Northern District of California seeking to permanently enjoin the proposed merger of JetBlue and Spirit as a violation of Section 7 of the Clayton Act, which proscribes mergers whose effects "may be substantially to lessen competition … in any line of commerce … in any section of the country." 15 U.S.C. § 18. (*Garavanian, et al. v. JetBlue Airways Corp. and Spirit Airlines, Inc.*, Case No. 23-cv-10678 (D. Mass.) ("Consumer Action")). I JA 54.

Four months later, on March 7, 2023, the United States filed suit in the District of Massachusetts, alleging the same violation and seeking the same relief as the consumers. *United States v. JetBlue Airways Corp. and Spirit Airlines, Inc.*, Case No. 23-cv-10511-WGY (Mar. 7, 2023) ("Government Action").

On March 16, 2023, the parties in the Consumer Action agreed to transfer their case to the District of Massachusetts, where it was ordered related to the Government Action. I JA 18 (ECF 35, 36). On May 23, 2023, the district court entered a case management order which, among other

things, consolidated the two actions for discovery. I JA 25 (ECF 96). The parties in both cases conducted expedited fact discovery in June and expert discovery in July.

### B. Plaintiffs' Expert

Plaintiffs' expert Hal Singer defined two categories of "origin-destination pairs" (that is, "routes" flown between two cities) that would be impacted by the merger. The first category, "Overlap Markets," refers to routes in which JetBlue and Spirit compete head-to-head. IV JA 2288. Among other things, Dr. Singer measured the impact the merger would have on competition in these markets by calculating the pre-merger and post-merger concentration levels of each market, using a commonly applied metric called the HHI concentration index.[3] IV JA 2288, 2331-2350.

Dr. Singer identified 229 Overlap Route markets in which the merger would increase HHI to over 2,500 *and* would lead to an increase in HHI of 200 points or more. IV JA 2334-35, 2344-47 (Tables A3.2 and

---

[3] HHI refers to the Herfindahl-Hirschman Index and is calculated by summing the squares of the market shares of all competitors within a market. For example, a market of 5 competitors with shares of 40%, 30%, 20%, 10% and 5% would yield an HHI of 3,025 ($40^2$ x $30^2$ x $20^2$ x $10^2$ x $5^2$).

A3.6). Markets with such high concentration levels and HHI point increases post-merger are "likely to enhance market power" and are presumptively unlawful. *See, e.g., Fed. Trade Comm'n v. Penn St. Hershey Med. Cntr*, 838 F.3d 327, 347 (3d Cir. 2016). Dr. Singer also concluded that in an additional 27 markets, the merger would result in a post-merger HHI in excess of 1,500 *and* raise HHI by at least 100 points. IV JA 2336, 2348 (Tables A3.3 and A3.7). Such concentration levels "potentially raise significant competitive concerns." U.S. Dep't of Justice & Fed. Trade Comm'n, HORIZONTAL MERGER GUIDELINES (2010), 19.

The second category of impacted markets analyzed by Dr. Singer are "Spirit-Only routes," defined as "every route served that only Spirit but no other ULCC serves." IV JA 2290. A "ULCC" is an "ultra low-cost carrier" that "target[s] budget-conscious passengers with low-cost, often unbundled flight options." *United States v. JetBlue*, WL 162876 at *2. Spirit is such a ULCC, and it frequently undercuts and puts pressure on the other airlines in the market. *Id* at *18. As a result, Spirit's presence in a market – known as the "Spirit Effect" – "also lowers other airlines' fares." *Id*. "When Spirit enters a market, its rivals reduce their prices by between 7% and 11%, on average." *Id*. Accordingly, Dr. Singer concluded

that the elimination of Spirit in "Spirit-Only routes" would reduce seat capacity and raise fares *market-wide*. IV JA 2288, 2290; *see also*, Supplemental Appendix 12-15. He found that "[i]ndeed, JetBlue has acknowledged that it would raise fares on routes formerly served exclusively by Spirit," harming passengers on "all routes served by Spirit but not served by JetBlue or any other Ultra Low-Cost Carrier," that is, the Spirit-Only Routes. IV JA 2288. More concisely, he found that within the Spirit-Only routes, "[c]onsumers of other airlines would suffer higher fares." IV JA 2290.

In addition, direct evidence was presented below that the merger would result in market-wide price increases on all impacted routes, including Spirit-Only routes. That evidence was impounded in the district court. To avoid discussion of those details in this publicly-filed brief, Appellants respectfully direct the Court's attention to the facts outlined at paragraphs 196-206 in the Supplemental Appendix ("SA") at pages 12-15.

Dr. Singer identified 283 Spirit-Only Routes that will be negatively impacted by the merger. IV JA 2298; IV JA 2351-2360.

### C. The Airlines' Motion for Summary Judgment

After the close of expert discovery, on August 1, 2023, the Airlines filed a motion for summary judgment against the Consumer plaintiffs on the grounds they lacked standing. I JA 33 (ECF 172). The Airlines contended that none of the plaintiffs had constitutional standing under Article III because "as of the close of discovery, none of the twenty-five Plaintiffs had concrete, imminent plans to fly Spirit." No. 23-cv-10678 (D. Mass. Aug. 1, 2023), ECF 173 at 1.

The Consumers opposed by arguing that the merger threatens Plaintiffs on each of the harmed routes they travel, "regardless of what airline they fly," since the damage to competition in those markets will result in higher prices, less capacity, lower quality service, and fewer choices across the market. No 23-cv-10678 (D. Mass Aug. 22, 2023), ECF 184 at 11. Plaintiffs also presented facts demonstrating that some of the plaintiffs, including the surviving plaintiffs below Gabriel Garavanian and Timothy Nieboer, fly Spirit regularly. *Id*. ECF 184 at 10.

### D. Disposition Below

On October 11, 2023, the lower court granted in part and denied in part JetBlue and Spirit's motion for summary judgment. ADD 1. It further found that Plaintiffs G. Garavanian and Nieboer had standing

and their case could proceed because "both Plaintiffs G. Garavanian and Niebor fly Spirit Airlines regularly, with 57% of Niebor's 25 flights in the past 8 years on Spirit and G. Garavanian flying 8 times with Spirit in the last year alone." ADD 12.

With respect to the remaining plaintiffs (all the Appellants), the district court concluded they "lack standing under Article III of the United States Constitution." ADD 1-2, 4-5. In a subsequent Memorandum of Decision,[4] the district court ruled "[t]he Plaintiffs who do not regularly fly Spirit Airlines lack standing under Article III of the United States Constitution." ADD 8.

The lower court's reasoning was premised on a reading of the "concreteness" and "particularity" requirements of Article III standing. ADD 9. The District Court defined a "concrete" injury as one that "actually exists." ADD 9 (quoting *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020)). It stated that "[a]n injury is 'particularized' when it 'affect[s] the plaintiff in a personal and individual way' that goes beyond widely

---

[4] On December 1, 2023, this Court remanded for further explanation on the district court's Rule 54(b) certification. IV JA 2615. On December 13, 2023, the district court explained its Rule 54(b) ruling, ADD 13, and also explained its grant of summary judgment in greater detail.

shared 'generalized grievances about the conduct of government.'" ADD 10 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992), and *Lyman*, 954 F.3d at 360).

The District Court interpreted these requirements to conclude that "[Appellants'] claims of harm do not meet the 'concrete and particularized' standard" because "Plaintiffs ... do not attempt to differentiate themselves from any other consumers in the market; on the contrary, they argue that the merger will harm all consumers in the relevant markets, regardless of their preferred airline." ADD 11. Therefore, the court concluded, "the proposed merger will not affect the Plaintiffs in a 'personal and individual way.'" ADD 12 (quoting *Lujan*, 504 U.S. at 560 n.1). Accordingly, the lower court ruled that Appellants' "claimed injuries ... do not meet the requirements for Article III standing." ADD 12.

### E. Statement of Facts

The original plaintiffs numbered twenty-five. I JA 54. During the pendency of the case, Plaintiff June Stansbury passed away, and her case was voluntarily dismissed. I JA 43. Of the twenty-four remaining

plaintiffs, twenty-two were dismissed at the summary judgment stage and filed a notice of appeal. ADD 1, 4; IV JA 2612.

To focus this appeal, nine of the twenty-two Appellants will proceed. The other thirteen Appellants will not further contest the judgment below. The Appellants proceeding with this appeal are: Katherine Arcell, Carolyn Fjord, Donald Freeland, Harry Garavanian, Valerie Jolly, Lisa McCarthy, Bill Rubinsohn, Sondra Russell, and Gary Talewsky.[5]

The evidence presented to the district court with respect to the travel of the remaining Appellants is as follows:

Katherine Arcell

Arcell primarily flies out of the New Orleans airport, which is closest to her residence. II JA 1172. She regularly flies between New Orleans and Houston to visit family. II JA 1178. Arcell has flown the New Orleans-Houston route five times in the preceding 14 months. III JA 1551. The Airlines do not dispute that Arcell flies the route frequently.

---

[5] The following Appellants do not further contest the lower court's judgment: Jose Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda Davis, Pamela Faust, Donna Fry, Yvonne Jocelyn Gardner, Michael Malaney, Leonard Marazzo, Deborah Pulfer, Clyde Stensrud, Pamela Ward, and Christine Whalen.

IV JA 2432. Nor do they dispute that the New Orleans-Houston route is a "Spirit Only" route that Plaintiffs' expert concluded would be impacted by the merger. IV JA 2432.

Arcell also "frequently travel[s]" from New Orleans to Newark to visit family that lives in New Jersey. II JA 1172. According to her discovery responses, she most recently flew that route 7 months before her interrogatories were signed. III JA 1552. She has also flown the route New Orleans-Newark ("MSY-EWR-MSY") on other previous occasions. III JA 1552. The route New Orleans-New York Metropolitan Area (of which Newark is a part) is highly concentrated. IV JA 2335. The route reflects a current HHI of 2,251, and the merger would increase concentration on that route by 575 points to 2,826. IV JA 2335.

<u>Carolyn Fjord</u>

Ms. Fjord and her husband live in Northern California and most frequently fly from Oakland and Sacramento. II JA 1288. They have four children and two grandchildren whom they visit regularly and "generally fly to their places." II JA 1287. One of their sons lives near Detroit, and the Fjords "fly out of Oakland a lot and go to his place, fly Oakland-Detroit." II JA 1287. Since 2017, the Fjords have travelled to Detroit on

four separate occasions. III JA 1637. On three of those occasions, the Fjords flew Spirit. III JA 1637; II JA 1287. Oakland-Detroit is a "Spirit Only" route that will experience price increases as a result of Spirit's elimination. IV JA 2358. The Airlines do not dispute that Fjord flies this route; nor do they dispute that Dr. Singer has identified the route as one that will be negatively impacted by the merger. IV JA 2461-2462.

Donald Freeland

Mr. Freeland lives in Southern California and flies out of the Los Angeles metropolitan area. II JA 1304. Freeland will regularly travel from Los Angeles to Cabo San Lucas, Mexico because his daughter recently moved there. II JA 1314. He testified he will fly the Ontario to Cabo San Lucas route on Spirit Airlines because the price is "under $100 a ticket." II JA 1310. Freeland has chosen to fly Spirit in the past. II JA 1649.

Freeland is also an avid bridge player and teaches the card game for cruise lines. II JA 1314 (*ll.* 11-17). As a result, he regularly travels to New York and Florida to board cruise ships. II JA 1304. He travels to New York "once every year or two" to embark on a cruise. II JA 1304. At the end of 2023, Freeland was set to depart on a transatlantic cruise from

Europe to Miami and was scheduled to fly home from Miami or Fort Lauderdale to Los Angeles. II JA 1314-15. Fort Lauderdale and Miami are among the "biggest cruise hub[s] in the world," II JA 1315-16, and Freeland testified that upon his upcoming retirement, he will be "traveling there regularly" from Los Angeles. II JA 1316 (*ll*. 4-5).

JetBlue and Spirit compete head-to-head on the Miami and New York to Los Angeles routes, which will suffer severe competitive harm as a result of the merger. IV JA 2334. The Miami-Los Angeles route is already high concentrated, with an HHI of 4,029, and the merger would increase concentration another 379 points to 4,408, rendering the merger presumptively unlawful. IV JA 2334. The merger would also increase the HHI on the Los Angeles-New York route by 110 points to 2,446, raising serious competitive concerns. IV JA 2336. The Airlines do not dispute that Freeland flies these routes; nor do they dispute that Dr. Singer has identified them as routes that will be negatively impacted by the merger. IV JA 2467-2468.

Harry Garavanian

Harry Garavanian lives with his wife outside Boston, and in 2020, his son graduated from college and "got a teaching job in Tampa." IV JA

2375; I JA 499. In August, 2020, H. Garavanian drove his son to Tampa and flew home. I JA 499. H. Garavanian now considers Tampa his "preferred" airport that he will fly into and out of regularly "because my son is in Tampa, that's the one I'm going to be concerned about, because if he needs me …." I JA 500. H. Garavanian testified that the merger would personally impact him because "my son's down in Tampa, so I am going to be definitely flying there." I JA 502. As of his deposition in June, 2023, H. Garavanian was "planning to definitely go" to Tampa "in the fall." I JA 502.

JetBlue and Spirit compete head-to-head on the already highly concentrated Boston-Tampa route, which has an HHI of 3,227 points. IV JA 2334. The merger and elimination of Spirit would increase market concentration on that route by 723 points from an HHI of 3,227 to 3,950, rendering the proposed merger presumptively unlawful. IV JA 2334. The Airlines do not dispute that Garavanian flies the Boston-Tampa route; nor do they dispute it has been identified as a route that will be negatively impacted by the merger. IV JA 2483-2484.

<u>Valerie Jolly</u>

Ms. Jolly lives with her husband in the Dallas/Fort Worth area. II JA 1381. She has flown from Dallas/Fort Worth to the New York City area approximately 8-10 times over the last 20 years. I JA 569; II JA 1381 ("Q. … You've flown that route quite often in the past? A. Yes.") In the past she visited New York "every single year" and intends to continue that frequency in the future. II JA 1382. She is "planning on ramping up on [her] personal travel" and "a lot of that will be across the United States." II JA 1383. At the time of her deposition in June 2023, Ms. Jolly had definitive plans to fly from Dallas to New York to visit her best friend "in the fall" and to attend the wedding of her friend's daughter. II JA 1382. Ms. Jolly also regularly travels with her husband to New York to visit Saratoga and the Lake George area. II JA 1382.

The Dallas-New York route that Ms. Jolly flies is a highly concentrated route of 2,972 HHI that will increase by 58 points to 3,030 after the merger. IV JA 2332. The Airlines do not dispute that Ms. Jolly flies this route; nor do they dispute it has been identified as an impacted route in Ms. Jolly's interrogatory responses. IV JA 2492-2493.

<u>Lisa McCarthy</u>

Ms. McCarthy lives near Fort Myers, Florida and most frequently travels to and from the Fort Myers airport. II JA 1408. She frequently travels from Fort Myers to Hartford, Detroit, and the New York area. III JA 1748-1751 (RSW = Fort Myers; BDL = Hartford; DTW = Detroit; EWR = Newark, *i.e.*, New York area).

McCarthy has travelled from Fort Myers to Hartford, Connecticut either six or eight times since 2015. III JA 1748-1751(chart indicating four times); I JA 656 (McCarthy also testified she was "going to Connecticut" "this weekend," and deposition occurred June 22, 2023 (I JA 650)); and IV JA 2381 (declaring "I will be flying from Fort Myers, FL to Hartford, Connecticut to visit friends in October 2023"). She travels to Hartford to visit "a very good friend who has a home in The Berkshires," and "use[s] Hartford as a destination to get to [there]." II JA 1414-15.

Competition on the Fort Myers-Hartford route would suffer drastic anticompetitive effects from the merger. That route is currently served by just three airlines – two of which are JetBlue and Spirit. IV JA 2334. Together, they currently control a combined 93% of the market. IV JA 2334. The elimination of Spirit would create a near *JetBlue monopoly* on

that route, increasing concentration by 3,335 points from 5,575 to an astounding HHI of 8,910. IV JA 2334.

McCarthy also frequently travels the Fort Myers-Detroit route ("RSW-DTW" or "DTW-RSW"), having done so 13 times since 2015. III JA 1748-1751. She travels to Detroit to "visit family and friends in the Detroit area" and intends to continue to do so in the future. II JA 1414-15. The Fort Myers-Detroit routes is a "Spirit-Only route" identified by Dr. Singer as one that will suffer a market-wide increase in fares with the elimination of Spirit. IV JA 2355.

Finally, McCarthy has flown the Fort Myers to New York route 9 times since 2015, III JA 1748-1751, and she intends to continue to fly that route in the future, II JA 1414-15. The merger will create "significant competitive concerns" in the Fort Myers-New York route by increasing concentration by 100 HHI points to 3,649. IV JA 2332.

The Airlines do not dispute that Ms. McCarthy flies these routes; nor do they dispute they have been identified as routes that will be impacted by the merger. IV JA 2506-2507.

<u>Bill Rubinsohn</u>

Bill Rubinsohn lives in Elkins Park, Pennsylvania. IV JA 2387. He most frequently flies out of Philadelphia. III JA 1453-54. He travels from Philadelphia by air "three or four times a year." III JA 1455. Three of those trips are to Michigan to visit his grandchildren. III JA 1455. Mr. Rubinsohn and his wife have three granddaughters in Michigan and they fly from Philadelphia to Detroit to visit them "at least 3 times a year." IV JA 2387. At his deposition, Rubinsohn testified that "what will absolutely happen" is he would travel to Michigan in September and December, 2023 and January and May, 2024. III JA 1459. In his declaration, Rubinsohn stated he booked his tickets from Philadelphia to Detroit for December 6 and December 11, 2023, and he provided other more precise dates as the departures drew nearer. IV JA 2387.

The Detroit-Philadelphia route is a "Spirit-Only route" in which competition will suffer if Spirit is eliminated. IV JA 2355. The Airlines do not dispute that Mr. Rubinsohn flies that route; nor do they dispute that it has been identified as a route that will be negatively impacted by the merger. IV JA 2521-2522.

Sondra Russell

Ms. Russell lives in Texas and most frequently flies out of Dallas Forth Worth. III JA 1798; *see also* II JA 860. She takes six personal trips a year. II JA 838; II JA 1463. When she travels by air, she most frequently travels to Fort Lauderdale. II JA 1463. Since 2015, she has flown that route 12 times, and 3 times in the 14 months preceding her deposition. III JA 1798 (10 times); II JA 840 (2 additional flights). The Dallas/Fort Worth to Fort Lauderdale route is a "Spirit Only route" that will be negatively impacted by the proposed merger. IV JA 2355. The Airlines do not dispute that Ms. Russel frequently flies the Dallas-Fort Lauderdale route; nor do they dispute that it has been identified as a route that will be impacted by the merger. IV JA 2525-2526.

Gary Talewsky

Mr. Talewsky divides his time between Foxborough, Massachusetts and Boca Raton, Florida. IV JA 2391; II JA 936; II JA 926. When in Florida, he considers his primary airports to be West Palm Beach and Fort Lauderdale, but he also flies out of Miami. III JA 1493. Talewsky also regularly flies out of Boston. III JA 1816-1820.

Since 2015, Talewsky has flown 25 times on four routes on which competition will be drastically impaired by the proposed merger. III JA 1816-1820 (Boston-Miami ("BOS/MIA"); Boston-Las Vegas ("BOS/LAS"); Boston-Orlando ("BOS/MCO"); and Boston-San Francisco ("BOS/SFO")). He has flown between Boston and Miami 13 times since 2015, most recently in September 2023. III JA 1816-1820. JetBlue and Spirit compete head-to-head on that nonstop route which is already highly concentrated with an HHI value of 2,644. IV JA 2334. Post-merger, the concentration on that route will increase by 1,341 points to 3,985. IV JA 2334.

Talewsky has also flown the Boston to Las Vegas route 8 times in the past five years, most recently in August 2023. III JA 1816-1820. That route – another nonstop route on which JetBlue and Spirit compete head-to-head – is even more highly concentrated, with an HHI of 4,212. IV JA 2334. The merger would increase concentration on that route by another 1,098 points to a post-merger HHI of 5,310 – more than double the threshold for applying a presumption of illegality. IV JA 2334.

Finally, Talewsky has flown the Boston to Orlando and Miami to San Francisco routes a total of 4 times in 2016 and 2019, respectively. III

JA 1816-1820. The merger would increase concentration in the Miami-San Francisco route by 120 points, from an HHI of 2,524 to 2,644. IV JA 2342. In the Boston-Orlando route, the merger would increase concentration from 2,341 to 3,609 points, an increase of 1,267 HHI points – well above the threshold for a finding the merger presumptively unlawful. IV JA 2335.

The Airlines do not dispute that Mr. Talewsky flies these routes; nor do they dispute they have been identified as routes that will be impacted by the merger. IV JA 25355-2536.

## SUMMARY OF ARGUMENT

When a merger increases concentration and infects a market with anticompetitive effects – like higher prices – consumers in that market are "threatened [with] loss or damage" and may sue. 15 U.S.C. § 26. As this Court has held, a consumer challenging a merger is "entitled to make a section 7 claim as a consumer … on the premise that the [merger] will increase concentration in the [] market and ultimately prices to it." *Town of Norwood, Mass v. New England Power Co.*, 202 F.3d 408, 423 (1st Cir. 2000). In fact, "consumers are *favored* plaintiffs in antitrust cases." *SAS*

*of Puerto Rico, Inc. v. Puerto Rico Telephone Co.*, 48 F.3d 39, 44 (1st Cir. 1995) (emphasis added).

Moreover, consumers suing to enjoin a merger under Section 16 of the Clayton Act only have to show a "*threat*" of harm. 15 U.S.C. § 26 ("[a]ny person" may sue and have injunctive relief "against threatened loss of damage by a violation of the antitrust laws"); *Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.* 754 F.2d 404, 408 (1st Cir. 1985) ("under § 16, a plaintiff need show only a threat of injury rather than an accrued injury").

Appellants have standing. They regularly consume air travel in markets or routes that will be anticompetitively impacted by the merger, threatening Appellants with higher prices, among other harms.

The district court erred when it concluded that "the Plaintiffs who do not regularly fly Spirit Airlines lack standing under Article III." ADD 8. It is true they do not regularly fly Spirit (with two exceptions, Ms. Fjord and Mr. Freeland, discussed below). But, the merger will harm fliers of *any* airline in the impacted markets. While the district court was right to conclude that Spirit fliers have standing, its decision was too narrow, and it should have permitted Appellants to proceed.

The district court's conclusion that Appellants lack Article III standing because they "do not attempt to differentiate themselves from any other consumers in the market," ADD 11, is likewise incorrect. Appellants' injuries are concrete and particularized. They will each suffer *real* harms that are *personal to them* if the merger is permitted to proceed. They are not required to further distinguish themselves from others as a prerequisite to establishing standing. The grant of summary judgment should be reversed.

## STANDARD OF REVIEW

The Court reviews the entry of summary judgment *de novo*. *Baez v. Town of Brookline, Massachusetts*, 44 Fed.4th 79, 82 (1st Cir. 2022).

"Summary judgment is appropriate only when the pleadings and other submissions show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Cia. Petrolera*, 754 F.2d at 411 (citing Fed.R.Civ.P. 56(c)). "In reviewing a grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party." *Id.*

# ARGUMENT

## I. APPELLANTS HAVE STANDING UNDER SECTION 16 AS CONSUMERS THREATENED WITH HARM FROM AN ANTITRUST VIOLATION

Appellants' claims for injunctive relief are authorized by Section 16 of the Clayton Act, which reads in relevant part, "[a]ny person … shall be entitled to sue for and have injunctive relief … against *threatened* loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). "Standing – in the words of § 16" means the plaintiff "must prove 'threatened loss or damage' to his own interests in order to obtain relief." *California v. American Stores Co.*, 495 U.S. 271, 296 (1990). In other words, "under § 16, a plaintiff need show *only* a threat of injury rather than an accrued injury." *Cia Petrolera*, 754 F.2d at 408 (emphasis added). As this Court has made clear, "the district court cannot require plaintiff to show *fact* of injury in an action under § 16." *Id.* (emphasis in original).

Reversal of the decision below is necessary because there is at least a triable issue as to whether Appellants are threatened with injury from the proposed merger. To summarize the statement of facts above, the

record shows that Appellants regularly fly the following routes:

| Appellant | Route(s) | Reason | Regularity |
|---|---|---|---|
| Arcell | New Orleans-Hou | Visit family | 5 times in last 14 months |
|  | New Orleans-N.Y. | Visit family | "frequently travels;" records unavailable; most recently flown last year |
| Fjord | Oakland-Detroit | Visit son | 5 times in last 6 years |
| Freeland | L.A.-Cabo S. Lucas | Visit daughter | Daughter recently moved; will travel regularly |
|  | L.A.-N.Y. | Teach bridge on cruises | "Every year or two" |
|  | L.A.-Miami | Teach bridge on cruises | regularly upon upcoming retirement |
| Garavanian | Boston-Tampa | Visit son | Son recently moved to Tampa; has definitive plans to regularly visit |
| Jolly | Dallas-New York | Visit best friend | Currently visits "every single year"; 8-10 times in last 20 years |
| McCarthy | Fort Myers-Hartford | "very good friend" in Berkshires | 6 or 8 times since 2015 |
|  | Fort Myers-Detroit | Visit family | 13 times since 2015 |
|  | Fort Myers-New York |  | 9 times since 2015 |
| Rubinsohn | Phil.-Detroit | Visit 3 grand-daughters | "three times a year" |
| Russell | Dal-F. Lauderdale |  | 12 times since 2015; 3 times in last 14 mos. |
| Talewsky | Boston-Miami |  | 13 times since 2015 |
|  | Boston-Las Vegas |  | 8 times since 2019 |
|  | Boston-Orlando Miami-SFO |  | 4 times total since 2016 |

The Airlines presented no evidence below to dispute that Appellants regularly fly these routes. IV JA 2432 (Arcell), 2461-2462 (Fjord), 2467-2468 (Freeland), 2483-2484 (Garavanian), Jolly (2492-2493), 2506-2507 (McCarthy), 2521-2522 (Rubinsohn), 2525-2526 (Russell), 2535-2536 (Talewsky).

Second, the evidence shows Appellants face a significant threat of injury on the routes they regularly fly if the merger were to proceed. The following pre-merger and post-merger concentrations indicate the strong likelihood of increased prices as a result of the merger, while prices on the "Spirit-Only Routes" will increase as a result of the elimination of the Spirit Effect and JetBlue's promise to raise prices and cut capacity on Spirit-Only routes:

| Route | HHI | HHI' | Increase |
|---|---|---|---|
| New Orleans-Hou | (Spirit-Only Route; HHI inapplicable)[6] | | |
| New Orleans-N.Y. | 2,251 | 2,826 | 575 |
| Oakland-Detroit | (Spirit-Only Route; HHI inapplicable) | | |
| L.A.-N.Y. | 2,336 | 2,446 | 110 |
| L.A.-Miami | 4,029 | 4,408 | 379 |
| Boston-Tampa | 3,227 | 3,950 | 723 |

[6] In Spirit-Only routes, the HHI is inapplicable because post-merger, JetBlue will replace Spirit, so market concentrations will not change. But, JetBlue will increase prices and remove seats from retrofitted Spirit aircraft. SA 12-15. And, because the "Spirit Effect" keeps market prices low, Spirit's exit will also increase prices. SA 14.

| Dallas-New York | 2,972 | 3,030 | 58 |
|---|---|---|---|
| Fort Myers-Hartford | 5,575 | 8,910 | 3,335 |
| Fort Myers-Detroit | (Spirit-Only Route; HHI inapplicable) | | |
| Fort Myers-N.Y. | 3,549 | 3,649 | 100 |
| Phil.-Detroit | (Spirit-Only Route; HHI inapplicable) | | |
| Dal-F. Lauderdale | (Spirit-Only Route; HHI inapplicable) | | |
| Boston-Miami | 2,644 | 3,985 | 1,341 |
| Boston-Las Vegas | 4,212 | 5,310 | 1,098 |
| Miami-SFO | 2,524 | 2,644 | 120 |
| Boston-Orlando | 2,341 | 3,609 | 1,267 |

The Airlines presented no evidence to dispute these concentration figures or to refute the threatened injury in Spirit-Only routes. IV JA 2432 (Arcell), 2461-2462 (Fjord), 2467-2468 (Freeland), 2483-2484 (Garavanian), Jolly (2492-2493), 2506-2507 (McCarthy), 2521-2522 (Rubinsohn), 2525-2526 (Russell), 2535-2536 (Talewsky). Neither did the Airlines offer any evidence below to dispute the anticompetitive effects the merger would have in the identified routes. *Compare* SA 12-15 *with* IV JA 2551-2555.

Where a merger results in a market with a concentration level of 2,500 points and increases concentration by 200 points or more, the merger is "likely to enhance market power" and courts consider it presumptively unlawful. *See, e.g., Penn St. Hershey Med. Cntr*, 838 F.3d at 347. Where the merger would increase HHI by at least 100 points and

result in a market concentration in excess of 1,500 points, the merger will "potentially raise significant competitive concerns." U.S. Dep't of Justice & Fed. Trade Comm'n, HORIZONTAL MERGER GUIDELINES (2010), 19. And, where "mergers that increase the HHI in [highly concentrated] markets by over 50 points 'potentially raise significant competitive concerns.'" *Fed. Trade Comm'n v. H.J. Heinz Co.*, 246 F.3d 708, 716 (D.C. Cir. 2001) (quoting Horizontal Merger Guidelines at §1.51). Every market identified here will become so concentrated as to pose at least a significant likelihood of anticompetitive effects in each route, threatening each Appellant with harm.

In the Spirit-Only markets in which Appellants fly, they are threatened with higher prices as a result of the merger's elimination of a maverick price-cutter that puts downward pricing pressure on every airline serving the route. IV JA 2288, 2290; SA 12-15 (¶¶ 196-199, 201-203, 205); *see also JetBlue*, WL 162876 at *18 ("Spirit Effect" "lowers other airlines' fares;" "[w]hen Spirit enters a market, its rivals reduce their prices by between 7% and 11%, on average").

Therefore, the foregoing summary of undisputed evidence is sufficient on its own to confer standing and reverse the decisions below.

Finally, Ms. Fjord and Mr. Freeland *also* have standing because they are Spirit fliers. Ms. Fjord has flown Spirit three times on the Oakland-Detroit route to visit her son in Michigan, and she has testified that she intends to continue to do so. III JA 1637, II JA 1287. Mr. Freeland's daughter just moved to Mexico and he will fly Spirit on the Ontario-Cabo San Lucas route regularly to visit her. II JA 1310, 1314. In addition to suffering higher prices and lower capacity as a result of the merger, these Appellants will also suffer harm from a loss of consumer choice. "[F]ewer choices for consumers [is] precisely the type of harm that we allow plaintiffs to vindicate through the antitrust laws." *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1303 (11th Cir. 2010).

## II. AS CONSUMERS IN MARKETS THAT WILL BE IMPACTED BY THE MERGER, APPELLANTS HAVE STANDING REGARDLESS OF WHAT AIRLINE THEY FLY

"[C]onsumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury." *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10-11 (1st Cir. 1999). "[T]he presumptively 'proper' plaintiff is a customer who obtains services in the threatened market." *SAS of Puerto Rico*, 48 F.3d at 44 (citing *Assoc. Gen'l*

*Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 539 (1983) (denying standing only because "Union was neither a consumer nor competitor in the market in which trade was restrained")). In fact, "consumers are favored plaintiffs in antitrust cases." *Id*. at 45; *see also*, *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 482 (7th Cir. 2020) ("The general rule is that customers and competitors in the affected market have antitrust standing").

More specifically, as this Court has explained, consumers in the relevant market have standing to challenge a merger under Section 7. *See, Town of Norwood*, 202 F.3d at 423 (customer was "entitled to make a section 7 claim as a consumer of wholesale power on the premise that the sale will increase concentration in the wholesale market and ultimately increase prices to it"); *see also* Hovenkamp, Herbert, FEDERAL ANTITRUST POLICY: THE LAW OF COMPETITION AND ITS PRACTICE, §16.3a3 (6th ed. 2020) ("Hovenkamp") ("The preferred plaintiff in a merger case is the consumer" who would be "injured by [the] post-merger price increase").

Consumers are favored antitrust plaintiffs in merger cases because an unlawful merger increases concentration, reduces capacity, and raises

prices among *all* the sellers – impacting every consumer – not just those consumers who purchase products from the merged entities. In this case, Spirit's aggressive competition in markets has had the effect of reducing fares charged by *other airlines* serving the same route. SA 14-15 (¶ 205). When Spirit stops serving a route, the average fare from all other airlines increases. *Id*. Thus, Appellants' expert opined the merger would cause "[c]onsumers of other airlines [to] suffer higher fares too" in Spirit-Only routes. IV App. page. In fact, the district court itself ultimately realized this fact after the government trial, finding that the "Spirit Effect" "lowers other airlines' fares" because "[w]hen Spirit enters a market, its rivals reduce their prices by between 7% and 11%, on average." *JetBlue*, WL 162876 at *2.

None of these facts was disputed by the Airlines below IV JA 2552-2555; SA 12-15. Just like the consumer in *Town of Norwood*, Appellants are "entitled to make a section 7 claim as consumer[s] … on the premise that the [merger] will increase concentration in the [relevant] market[s] and ultimately increase prices." 202 F.3d at 423.

### III. APPELLANTS HAVE ARTICLE III STANDING

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In other words, a plaintiff must have a "personal stake in the outcome" of the case. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

Appellants have a personal stake in this case because they are threatened with paying supracompetitively high prices in markets that will be negatively impacted by the merger. But, the district court concluded their claims "do not meet the 'concrete and particularized' standard" because they "failed to differentiate themselves from any other consumers in the market," so their injuries are too "widely shared." ADD 11. This was legal error.

First, to be "concrete," an injury "cannot be 'abstract.'" *Lyman*, 954 F.3d at 360 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Here, the payment of higher prices is a very "real" injury, and Appellants' threatened harm is readily distinguished from the type of injury that is too "abstract" to pass Article III muster. The Supreme Court in *Spokeo*

gave a helpful example. There, the Court explained that even if a reporting company incorrectly reported, say, a consumer's *zip code* – and thereby technically violated the Fair Credit Reporting Act – that consumer still cannot sue, since "it is difficult to image how the dissemination of an incorrect zip code … could work any concrete harm." 578 U.S. at 342. Here, Appellants' threatened harm suffers from no such abstraction. The payment of higher prices is quintessentially concrete.

The district court, therefore, erroneously focused its reasoning on a conclusion that Appellants' injuries were insufficiently "particularized." ADD 10. It stated that to be particularized, a harm must "'affect the plaintiff in a personal and individual way that' that goes beyond widely shared 'generalized grievances about the conduct of government.'" ADD 10 (quoting *Lujan*, 504 U.S. at 560 n.1 and *Lyman*, 954 F.3d at 361).

Seemingly acknowledging that Appellants would pay higher prices post-merger, the district court faulted Appellants because they "do not attempt to differentiate themselves from any other consumers in the market; on the contrary, they argue that the merger will harm all consumers in the relevant markets, regardless of their preferred airline." ADD 11. Thus, "the proposed merger will not affect the Plaintiffs in a

'personal and individual way,'" because Plaintiffs' injuries "are 'widely shared.'" ADD 12. This was error.

All consumers in a market that has been impacted by an antitrust violation _do_ have standing to sue. *Serpa*, 199 F.3d at 10-11; *SAS of Puerto Rico*, 48 F.3d at 44; *Assoc. Gen'l Contractors of Calif.*, 459 U.S. at 539; *Viamedia,* 951 F.3d at 482; *Town of Norwood*, 202 F.3d at 423; Hovenkamp at §16.3a3.

For example, if Spirit were eliminated from the Spirit-Only route of Philadelphia-Detroit, no other ULCC would be available to constrain the prices of other airlines serving that route, and Mr. Rubinsohn and his wife would be forced to pay higher prices – and suffer other harms, like fewer options and lower quality – when visiting their grandchildren three times a year in Michigan. That is an injury Mr. Rubinsohn will suffer "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. He will "personally … suffer some actual or threatened injury." *Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464, 472 (1982). The fact that some *other* regular Philadelphia-Detroit flier may – or may *not* – have also brought suit is irrelevant. Mr. Rubinsohn is not required to distinguish himself among the other regular

Philadelphia-Detroit fliers before constitutional jurisdiction over his Case or Controversy will attach.

In concluding otherwise, the district court incorrectly applied the reasoning from cases involving "widely shared" and "generalized grievances about the conduct of government" that are not applicable here. ADD 10 (citing *Lyman v. Baker*, 954 F.3d 351 (1st Cir. 2020); and *Becker v. Fed. Elect'n Comm'n*, 230 F.3d 381 (1st Cir. 2000)).

In *Becker*, one of the two cases relied on by the district court, voters brought suit against the Federal Election Commission for allowing corporate sponsorship of presidential debates, effectively prohibiting candidate Ralph Nader from participating because his campaign had pledged not to accept corporate donations. 230 F.3d at 383-84. The voters asserted they were "harmed directly by the corruption of the political process allegedly caused by corporate sponsorship of the debates." *Id*. at 389. The Court held that "harm done to the general public by corruption of the political process" is not a "particularized burden [plaintiffs] will suffer as a result of corporate sponsorship of the debates." *Id*. at 389-390.

But, Appellants are not asserting a "harm done to the general public." They are asserting harms they are specifically threatened with

by virtue of the merger's anticompetitive effects on routes they frequently travel.

The district court also cited the *Lyman* case, in which this Court held that injuries "too 'widely shared'" "may fall into the category of generalized grievances about the conduct of government." *Lyman*, 954 F.3d at 361. There, voters in Massachusetts challenged the state's "winner-take-all" statute that grants all eleven electoral votes to the presidential candidate that wins the state's popular vote. *Id*. at 356. The Commonwealth argued the voters had no standing and suffered no "particularized injury because the winner-take-all method applies to every voter who casts a ballot in presidential elections." *Id*. at 361. Notwithstanding the "widely shared" injury the voters asserted, this Court held they had standing because "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." *Id*.

Likewise here, Appellants are threatened with harm "to themselves as individuals," and the fact that others who have not sued may suffer similar harms – or that Appellants' harms are "wide spread" – has no bearing on these Appellants ability to proceed. Appellants' threatened injuries are not "generalized grievances about the conduct of

government." ADD 10. Their injuries are concrete and particularized, and they have Article III standing to pursue their case.

## CONCLUSION

Based on the foregoing, the district court's decision granting the Airlines' motion for summary judgment should be reversed.

Respectfully submitted,

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 398-3800
Joseph@AliotoLegal.com

*Attorneys for Plaintiffs-Appellants*

March 4, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that Appellants' Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the brief contains 7,539 words.

The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font as provided by Fed. R. App. P. 32(a)(5)-(6). As authorized by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of the word processing system in preparing this certificate.

/s/ Joseph M. Alioto Jr.

JOSEPH M. ALIOTO JR.
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 398-3800

March 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Joseph M. Alioto Jr.

JOSEPH M. ALIOTO JR.
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 398-3800

March 4, 2024

# ADDENDUM

| **Document** | **Page** |
| --- | --- |
| Order (Oct. 11, 2023) ......................................................... 1 | |
| Memorandum of Decision (Dec. 13, 2023) ....................................... 4 | |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
GABRIEL GARAVANIAN, et. al.      )
                                )
            Plaintiffs,          )
                                )
        v.                       )     CIVIL ACTION
                                )     NO. 23-10678-WGY
JET BLUE AIRWAYS CORPORATION,    )
SPIRIT AIRLINES, INC.            )
                                )
            Defendants.          )
                                )
_____)

YOUNG, D.J.                                      October 11, 2023

**ORDER**

The Defendant Airlines filed a motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, and the parties have fully briefed the issue, Pl.'s Opp'n. Mot. Summ. J., ECF No. 184; Def.'s Reply Opp'n. Mot. Summ. J., ECF No. 212. This Court held oral argument on October 4, 2023, and took the parties' arguments regarding the Plaintiffs' standing under advisement.

After careful review, this Court **DENIES** the motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with respect to Plaintiffs Gabriel Garavanian ("G. Garavanian") and Timothy Niebor ("Niebor"). This Court **GRANTS** the motion for summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with respect to all other Plaintiffs as they lack standing under

[1]

**ADD 1**

Article III of the United States Constitution.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

   G. Garavanian and Niebor both fly Spirit Airlines ("Spirit") regularly and allege they will be harmed by the lower output and higher prices that may result from Spirit's acquisition by Jet Blue Airways ("JetBlue").  See Pl. Niebor's Supp. Responses Interrogatories, ECF No. 175-66; Pl. G. Garavanian's Supp. Responses Interrogatories, ECF No. 175-43; G. Garavanian Dep., ECF No. 175-42.  Each has standing to bring an antitrust claim because they are "the type of person[s] the law intends to protect against the harm of which [they] complain." Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 408 (1st Cir. 1985) (citing Ozonoff v. Berzak, 744 F.2d 224, 227 (1st Cir. 1984)).

   Defendants' motion for summary judgment, ECF No. 172, is denied as to Plaintiffs G. Garavanian and Niebor, and granted as to all others.  The Court welcomes amicus briefs from the dismissed Plaintiffs, should they be inclined to file them.  It is in the interest of justice that judgment for the Defendants against the other Plaintiffs shall be entered at once, per Rule 54(b), so that an immediate appeal may be lodged.


   **SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[1]

---

[1]   This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[3]

**ADD 3**

                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

_____
                                )
GABRIEL GARAVANIAN, et al.,     )
                                )
            Plaintiffs,          )
                                )
        v.                      )        CIVIL ACTION
                                )        NO. 23-10678-WGY
JET BLUE AIRWAYS CORPORATION,   )
SPIRIT AIRLINES, INC.,          )
                                )
            Defendants.          )
                                )
_____)

YOUNG, D.J.                                    December 13, 2023

                     **MEMORANDUM OF DECISION**

     In this private antitrust litigation, the Defendant

Airlines filed a motion for summary judgment, Def.'s Mot. Summ.

J., ECF No. 172, and the parties fully briefed the issue, Pl.'s

Opp'n. Mot. Summ. J., ECF No. 184; Def.'s Reply Opp'n. Mot.

Summ. J., ECF No. 212.  This Court held oral argument on October

4, 2023, and took the parties' arguments regarding the

Plaintiffs' standing under advisement.

     After careful review, this Court **DENIED** the motion for

summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with

respect to Plaintiffs Gabriel Garavanian ("G. Garavanian") and

Timothy Niebor ("Niebor").  This Court **GRANTED** the motion for

summary judgment, Def.'s Mot. Summ. J., ECF No. 172, with

respect to all other Plaintiffs as they lack standing under

                              [1]

                                                        **ADD 4**

Article III of the United States Constitution.  See Lujan v.
Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

**I.  BACKGROUND**

    **A.  The JetBlue and Spirit Merger**

    On July 28, 2022, Jet Blue Airways Corporation ("JetBlue")
and Spirit Airlines, Inc. ("Spirit") executed a final merger
agreement.  Compl. ¶ 48, ECF No. 1.  JetBlue, the sixth largest
airline in the United States, agreed to pay $3.8 billion to
acquire Spirit, the seventh largest airline in the United
States.  Id. at ¶¶ 33, 48.  The proposed merger would create the
country's fifth largest airline with 10.2% of the national
market.  Id. at ¶ 50.  Spirit is known as an "Ultra-Low-Cost
Carrier" ("ULCC"), meaning that its offerings target budget-
conscious passengers with low-cost flight options.  Id. at ¶¶
52-55.  The Department of Justice, joined by multiple states,
has also filed a lawsuit under the Clayton Act to prevent the
proposed merger between JetBlue and Spirit.  See United States
of America, Commonwealth of Massachusetts, District of Columbia,
State of New York, State of California, State of North Carolina,
State of Maryland, State of New Jersey v. JetBlue Airways
Corporation, Spirit Airlines, Inc., Civ. Action No. 1:23-cv-
10511-WGY (D. Mass. 2023).

[2]

**ADD 5**

**B. Plaintiffs' Relationship to the Airline Industry**

The Plaintiffs here are a group of private individuals who have flown and continue to fly as passengers in commercial air travel.  Compl. ¶ 42, ECF No. 1.  Some of the Plaintiffs also work as travel agents.  Id.  As of the close of discovery, none of the Plaintiffs had booked plans to travel with Spirit in the future.[1]  Reply Mem. Supp. Summ. J., ECF No. 212.  Twenty-two of the twenty-four living Plaintiffs have not flown Spirit within the past four years.[2]  Pl.'s Opp'n. Def.'s Statement Material Facts Supp. Summ. J. ¶ 27, ECF No. 186.

The Plaintiffs who work in the travel industry are Brito, Brown,[3] Faust, Fjord, Freeland, Fry, G. Garavanian, Gardner, Jolly, McCarthy, Pulfer, Rubinsohn, Stensrud, Talewsky, and Ward.  Id. at ¶ 29.  Aside from Brown and McCarthy (who each receive a set yearly salary), the Plaintiffs who work in the travel industry are generally paid in one of two ways for

---

[1] On August 22, 2023 (almost two months after the close of discovery -- June 28, 2023 -- and weeks after the Airlines filed for summary judgment), eighteen of the Plaintiffs filed declarations, contradicting prior sworn testimony, to state that they now had future flight plans booked with Spirit.  Reply Mem. Supp. Summ. J., ECF No. 212.

[2] Stansbury died after the commencement of this action.  Pl.'s Opp'n Def.'s Statement Material Facts Supp. Summ. J. ¶ 168, ECF No. 186.

[3] Brown's affiliation with the travel industry is disputed by the parties; she has testified that she is presently employed as the travel manager for the Beach Boys.  Pl.'s Opp'n Def.'s Statement Material Facts Supp. Summ. J. ¶ 29, ECF No. 186.

**ADD 6**

booking airline tickets: 1) flat service fees for each flight, for which they charge customers directly; and 2) scaled service fees based on the price of the airline ticket.  <u>Id.</u> at ¶¶ 30, 55, 141.

The two Plaintiffs who have flown Spirit in the past four years, Niebor and G. Garavanian, both fly Spirit regularly.  <u>See</u> Pl. Niebor's Supp. Responses Interrogs., ECF No. 175-66.  In the past eight years, Niebor has flown 25 times, with 57% of those flights on Spirit Airlines.  <u>Id.</u>  Garavanian flies Spirit about four times a year, traveling mostly between Boston and his second home in Myrtle Beach, FL.  <u>See</u> Pl. G. Garavanian's Supp. Responses Interrogs., ECF No. 175-43; G. Garavanian Dep., ECF No. 175-42.

**II. STANDARD OF REVIEW**

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u> v. <u>Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986).  Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment.  <u>Id.</u>

[4]

**ADD 7**

In reviewing the evidence, this Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  This Court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151.

The moving party bears the initial burden of demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant does so, then the nonmovant must set forth specific facts sufficient to establish a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. ANALYSIS

The Plaintiffs who do not regularly fly Spirit Airlines lack standing under Article III of the United States Constitution.  Therefore, the Court granted summary judgment for the Airlines with regards to those Plaintiffs (Arcell, Brito, Brown, D'Augusta, Davis, Faust, Fjord, Freeland, Fry, H. Garavanian, Gardner, Jolly, Malaney, Marazzo, McCarthy, Pulfer, Rubinsohn, Russell, Stensrud, Talewsky, Ward, and Whalen).  The Court denied summary judgment with regards to the two Plaintiffs who fly Spirit Airlines regularly: G. Garavanian and Niebor.

[5]

**ADD 8**

**A. Standing Under Article III**

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case -- in other words, standing." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203, (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

Most of the Plaintiffs in this case fail to establish standing because they cannot show that they have suffered an injury in fact that is concrete, particularized, and actual or imminent. The injury in fact must be "concrete and particularized"; it must also be "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Plaintiffs G. Garavanian and Niebor have standing because they are "the type of person the law intends to protect against the harm of which [they] complain." Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 408 (1st Cir. 1985) (citing Ozonoff v. Berzak, 744 F.2d 224, 227 (1st Cir. 1984)).

[6]

ADD 9

A plaintiff must show that "he personally has suffered some actual or threatened injury ...." Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 472 (1982) (quotations omitted).  "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals," and that federal courts exercise "their proper function in a limited and separated government."  TransUnion LLC, 141 S. Ct. at 2203 (citations and quotations omitted).  "Concreteness and particularity are two separate requirements."  Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020) (citing Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)).  An injury is "concrete" when it "actually exist[s]."  Id. (quotations omitted).  An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1, that goes beyond widely shared "generalized grievances about the conduct of government," Lyman, 954 F.3d at 361 (citing Becker v. Fed. Election Comm'n, 230 F.3d 381, 390 (1st Cir. 2000)).

Plaintiffs Arcell, Brito, Brown, D'Augusta, Davis, Faust, Fjord, Freeland, Fry, H. Garavanian, Gardner, Jolly, Malaney, Marazzo, McCarthy, Pulfer, Rubinsohn, Russell, Stensrud, Talewsky, Ward, and Whalen here argue that the proposed merger of JetBlue and Spirit is "a violation of Section 7 of the

[7]

**ADD 10**

Clayton Antitrust Act (15 U.S.C. § 18) because the direct effect of the elimination of Spirit may be 'substantially to lessen competition, or tend to create a monopoly' in the passenger airline industry by the elimination of a significant competitor in a non-trivial transaction." Compl. ¶ 6, ECF No. 1.  Under Section 16 of the Clayton Act, "[a]ny person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.  The Plaintiffs claim that they will suffer losses and damages from the proposed merger due to their participation as consumers in the markets that may be impacted by the proposed merger.  See Pl.'s Mem. Opp'n Summ. J. 7-11, ECF No. 184.  These Plaintiffs, however, do not attempt to differentiate themselves from any other consumers in the market; on the contrary, they argue that the merger will harm all consumers in the relevant markets, regardless of their preferred airline.  Id. at 11-12.  The Plaintiffs also argue that those Plaintiffs who work in the travel industry will be further harmed because they will "lose customers and sales as a result of the merger's effects, as more and more people turn away from air travel as a result of higher prices and reductions in service."  Id. at 13.

The Plaintiffs' claims of harm do not meet the "concrete and particularized" standard.  Although, viewing all facts in

[8]

**ADD 11**

the light most favorably for the Plaintiffs, there could be an
argument that the harms alleged will be concrete (at least for
the two travel agent Plaintiffs who rely on commissions), this
harm is still not particularized.  As the Plaintiffs themselves
argue, the proposed merger will not affect the Plaintiffs in a
"personal and individual way."  Lujan, 504 U.S. at 560 n.1.
Plaintiff's injuries, instead, are "widely shared."  Lyman, 954
F.3d at 361.  These claimed injuries, therefore, do not meet the
requirements for Article III standing.

**B. The Plaintiffs as Consumers of Air Travel**

According to their deposition testimony and the proffered
evidence, both Plaintiffs G. Garavanian and Niebor fly Spirit
Airlines regularly, with 57% of Niebor's 25 flights in the past
8 years on Spirit and G. Garavanian flying 8 times with Spirit
in the last year alone.  See Pl. Niebor's Supp. Responses
Interrogs., ECF No. 175-66; Pl. G. Garavanian's Supp. Responses
Interrogs., ECF No. 175-43; G. Garavanian Dep., ECF No. 175-42.
In contrast, none of the other Plaintiffs have ever flown
Spirit, and only two have even flown on a route the Plaintiffs'
expert identified as an "affected route" as defined by antitrust
harms.  See generally Pl.'s Supp. Responses Interrogs. and Pl.'s
Dep., ECF No. 175.  These Plaintiffs' flying habits, even if
frequent, fail to demonstrate a "'personal stake' in the case"

**ADD 12**

as needed for Article III standing.   <u>TransUnion</u>, 141 S. Ct. at 2203.

**IV. CONCLUSION**

The defendants' motion for summary judgment, ECF No. 172, was denied as to Plaintiffs G. Garavanian and Niebor, and granted as to all others for the reasons set forth above. As the Court of Appeals has reminded me, grant of a motion under Fed. R. Civ. P. 54 (b) requires the district court "expressly [to] determine that there is no just reason for delay." I reasoned here that a prompt appeal by the dismissed individuals is in the interest of justice due to the pendency of a companion case by the United States seeking the same relief. <u>See</u> <u>United States</u> v. <u>Jet Blue Airways Corp.</u>, Civ. Action No. 23-10511-WGY (D. Mass.).

**Respectfully Submitted,**

<u>/s/William G. Young</u>
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[10]

**ADD 13**